[No. B086810. Second Dist., Div. Six. Aug. 1, 1995.]

AUDLEY ASHLEY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PRODUCTION
DEVELOPMENT CORPORATION et al., Respondents.

COUNSEL

Wheeler & Beaton and Gifford G. Beaton for Petitioner.

Leath & Alabart and Lawrence T. Musso for Respondents.

OPINION

STONE (S. J.), P. J.—A workers' compensation judge (WCJ) apportioned 50 percent of applicant's permanent disability to subsequent noncompensable events—applicant's pregnancy and unemployment—relying on Labor Code section 4750.5. Applicant petitioned for reconsideration, which the Workers' Compensation Appeals Board (Board) denied. Applicant then petitioned for a writ of review, which this court granted. After review, we have concluded that the apportionment was erroneous, and remand this matter to the Board for appropriate disposition.

## FACTS AND PROCEDURAL HISTORY

Applicant Audley Ashley, born June 8, 1948, was employed in various clerical capacities with different employers, and developed severe carpal tunnel symptoms in both hands and extremities. Applicant alleged both specific and cumulative industrial injuries to her neck, back, spine, and upper and lower extremities as well as a miscarriage, in three compensation cases.

Her initial industrial injury was sustained on September 29, 1984. While on a banking errand for her employer, the San Luis Obispo YMCA, applicant's vehicle was hit by another car. As a consequence, she injured her neck, back, shoulder; her nose was broken. It developed that applicant was pregnant, and she miscarried in December 1984. Applicant obtained medical treatment and was off work for a short time, but returned and worked until March 1986, when she could no longer keep up with the work. At no time did applicant's employer advise her of her right to workers' compensation, although the employer paid part of applicant's medical expense.

Applicant commenced work in September 1986, with Bill Bowman Insurance Agency, also known as Central Coast Insurance, Inc., again in a clerical capacity. She developed carpal tunnel symptoms at this time and was forced to leave work in November 1986. This employer did not advise applicant of her compensation rights, either, and in addition was uninsured for workers' compensation.

Applicant obtained state disability and stayed off work for a year. On about September 15, 1988, applicant began delivering telephone books for the Production Development Corporation. She left the job on September 26, 1988, because of increased neck pain. Applicant continued to be unaware of her workers' compensation rights. Shortly thereafter, applicant became pregnant again, and delivered a child on July 22, 1989.

The three compensation claims were filed in January 1989. Applicant was examined thereafter by neurologist Hugh Greer, M.D., who wrote a series of reports about her injuries. He reported on November 13, 1989, that applicant had been totally temporarily disabled from bilateral carpal tunnel syndrome since December 1986, that her symptoms had commenced during her employment at the Bill Bowman Insurance Agency, and that her disability was "the probable partial result" of her employment there. Dr. Greer repeated the view expressed first in October 11, 1989, that applicant's disability should be apportioned "A. 40% to her employment at Bowman for four months. [¶] B. 10% to her employment delivering phone books for one month. [¶] C. 50% to her period of unemployment between 12-86 and 9-88, plus her pregnancy. This portion of the disability is not related to the employment." Applicant's condition was also orthopedically evaluated by Morrison McDavid, M.D. On November 6, 1989, Dr. McDavid opined that applicant's present symptoms were the direct result of her automobile accident in 1984. (This opinion was shared by Daniel Woods, M.D., who operated on applicant's wrists in 1992, and would have apportioned 90 percent of the disability between the first and second employers, with only 10 percent to the third.)

In September 1991, the WCJ issued findings and award in applicant's first case, SBA 61747, against defendant YMCA. Defendant YMCA had admitted injury to applicant's neck and back, but the WCJ found industrial injury only to applicant's nose and awarded permanent disability indemnity of 10¾ percent. In doing so, he stated he was relying on the opinion of Dr. Greer. The WCJ also found, in SBA 61748, that applicant had sustained a cumulative injury during her employment with defendant Bill Bowman Insurance Agency (which appears to have been of two months' duration, not four, as Dr. Greer described it), and another (separate) cumulative injury, in SBA

61749, during her two weeks' employment by defendant Production Development Corporation. (The Uninsured Employers' Fund had been joined in the action against the Bowman agency.) The WCJ found applicant had been totally temporarily disabled due to the carpal tunnel syndrome from December 1986 forward, and needed further medical treatment. He also determined that the statute of limitations was not in issue, because none of the defendants had offered any proof that they had ever advised applicant of her compensation rights.

After carpal tunnel surgery in 1992, applicant's condition was adjudged permanent and stationary by Dr. Woods in a report dated May 12, 1993. While applicant's pain had lessened, she had lost 66 percent of her grip strength in both hands. Dr. Woods expressed the view that applicant was precluded "from activities which require continuous use of the hands such as grasping, pushing, pulling, and the use of computer keyboards or a 10 key adding machine on more than an occasional basis. She further has a lifting restriction because of her severe grip strength loss in both hands since she has lost approximately 75% of her ability to lift weights. At this time her lifting restriction would be approximately 10 pounds." Dr. Woods stated that applicant should be provided with future medical treatment and was a qualified injured worker.[1]

Orthopedic surgeon Brendan McAdams, M.D., reported for the defense on May 14, 1993, that the cause of applicant's carpal tunnel syndrome was "idiopathic" (unknown) and that applicant's medical history had been "manipulated."

Dr. Greer reported again, on October 18, 1993, that after surgery applicant had disability "limiting her to light work with both hands. This means that she should avoid lifting weights in excess of 10 pounds with both hands." Dr. Greer thought applicant was a qualified injured worker, and should be involved in vocational rehabilitation, and that her need for total temporary disability benefits had terminated when Dr. Woods found her "permanent and stationary" in May 1993. Dr. Greer also repeated once again his "apportionment" of half of applicant's disability to nonindustrial causes. Dr. Greer was also asked to comment after viewing sub rosa films of applicant on a fishing trip and while caring for her four-year-old son, taken on behalf of defendant Production Development Corporation. Dr. Greer stated the films had not changed his opinions concerning applicant.

The WCJ requested a permanent disability rating, based on Dr. Greer's opinions and reports, with some reference to the restrictions described by Dr.

---

[1]In a letter of June 9, 1993, to applicant's attorney, Dr. Wood reiterated his belief that applicant had suffered "one continuous cumulative trauma with her work activities."

Woods. He also stated: "Consider that 50% of the above disability is apportionable to nonindustrial causes, and under the principals [*sic*] of *Wilkinson* 40% of the above disability is apportionable to this injury while 10% is apportionable to the companion case." This produced a total disability rating of 57 percent, apportioned to 28½ percent. Applicant made a motion to strike, contending that the WCJ's ruling that the minimum compensation rate was applicable was erroneous, as well as his ruling on apportionment.

The WCJ issued findings and order, denying applicant's motion to strike the rating and determining that applicant's permanent disability was 28½ percent after apportionment, with 40 percent of the liability therefor imposed on defendant Bill Bowman Insurance Agency and 10 percent on defendant Production Development Corporation. He also ruled that applicant was not in need of further medical treatment. In his opinion on decision, the WCJ declared that he was relying on Dr. Greer's "opinion as to the causes of applicant's present disability [with] 50% [apportioned] to the subsequent non-industrial injury." The WCJ noted that jurisdiction was reserved over the rate at which compensation was to be paid to the applicant, declaring that there might be "some merit" to applicant's position that the rate was too low. He also denied defendant Production Development Corporation's appeal from the rehabilitation unit's decision and order that applicant was a qualified injured worker entitled to vocational rehabilitation.

Applicant petitioned for reconsideration, contending that the WCJ's findings and order were erroneous (1) as to the rate of compensation (2) apportionment and (3) the disallowance of future medical treatment. With respect to apportionment, applicant argued that neither "pregnancy" nor "unemployment" were the "injuries" which Labor Code section 4750.5 intended to preclude. Applicant suggested that since there was no known case law interpreting the statute, the apportionment principles employed in applying Labor Code sections 4750 and 4663 should be followed.

The WCJ recommended denial of the petition for reconsideration, without any discussion whatsoever of his determination to apportion away 50 percent of applicant's permanent disability to a "subsequent non-industrial cumulative injury" pursuant to Labor Code section 4750.5, except to state he relied on Dr. Greer's opinion. The WCJ did recommend that his finding disallowing further medical treatment be deleted. On October 14, 1994, the Board issued its opinion, granting reconsideration to delete the WCJ's finding on further medical treatment, and as modified, affirming the WCJ's findings and award in all other respects. The Board did not offer any discussion

concerning apportionment and Labor Code section 4750.5, either.[2] Applicant's timely and verified petition for writ of review to this court followed, raising anew the issues contained in her petition for reconsideration.

DISCUSSION

I. <em>Apportionment</em>

■ Generally, an employer is held responsible in the workers' compensation system only for the disability of an injured employee arising from the particular employment with that employer, but not for disability fairly attributable to periods of employment elsewhere or to nonindustrial conditions. Apportionment is the process employed by the Board to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility.

Apportionment is permitted by specific statutory provisions in the Labor Code, primarily Labor Code sections 4750 and 4663.[3] Interpretation of these statutory provisions has produced a body of decisional law which has laid down certain principles. Labor Code section 4750 precludes an employer from being required to compensate an injured worker for disability attributable to a preexisting permanent disability or physical impairment. Labor Code section 4663 precludes an employer from being required to compensate an injured worker for disability attributable to a preexisting disease or condition. Since it favors employers, the burden of establishing that apportionment is appropriate in a given case rests on the employer, and it is proved by expert medical opinion. (*Pullman Kellogg* v. *Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 455-456 [161 Cal.Rptr. 783, 605 P.2d 422].)

■ The medical opinion relied on for making apportionment determinations cannot be speculative, and must disclose familiarity with the basis for apportionment. It must describe in detail the exact nature of the disability to

---

[2]We note that Labor Code section 5313 requires the Board to make factual findings and present its reasoning in arriving at decision. Neither the WCJ nor the Board adequately explained why Labor Code section 4750.5 mandated apportionment in this case, a particularly unhelpful circumstance considering the dearth of either Board or appellate decisions concerning section 4750.5.

[3]There is also provision for apportionment in Labor Code section 5500.5, subdivision (a), which governs cumulative injuries and occupational diseases arising out of more than one employment.

which apportionment is sought, and the basis for the opinion. (*King* v. *Workers' Comp. Appeals Bd.* (1991) 231 Cal.App.3d 1640, 1646-1647 [283 Cal.Rptr. 98].) In 1 Hanna, California Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1994) Permanent Disability Benefits, section 8.05[1], page 8-21, it is said that "[a]pportionment under either [Labor Code section 4750 or 4663] is proper only when the preexisting disability is shown to be 'labor disabling.' " Furthermore, it "can never be made on the basis of pathology or causative factors, . . . it must be made on the basis of disability." (*Id.,* § 8.06[1], at p. 8-28.1.)[4]

■ Dr. Greer's expression of opinion as early as October 1989, that only half of applicant's disability was industrially caused, is not persuasive. ■ Industrial causation in the first instance is established when it is determined that the injury has arisen out of the employment and during the course of employment. This conclusion is not stated in percentages, in nonpsychiatric cases. It is sufficient to show a reasonable probability of industrial causation. (*McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 419 [71 Cal.Rptr. 697, 445 P.2d 313].) The WCJ made such a finding in this matter.

In addition to sections 4750 and 4663, which apply to impairments and diseases preexisting the employment, section 4750.5 was added to the Labor Code in 1983.[5] It applies to subsequent injuries, and provides: "An employee who has sustained a compensable injury and who subsequently sustains an unrelated *noncompensable* injury, shall not receive permanent disability indemnity for any permanent disability caused solely by the subsequent noncompensable injury. [¶] The purpose of this section is to overrule the decision in *Jensen* v. *WCAB,* 136 Cal.App.3d 1042 [186 Cal.Rptr. 570]." (Italics added.)

Insofar as we have been able to discover, no appellate court has yet considered the meaning of Labor Code section 4750.5 in a published opinion. Our task is to ascertain legislative intent, "so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In order to determine the legislative intent in enacting the statute, we turn first to the actual language of the statute itself. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ In enacting this statute, the Legislature made

---

[4]An exception to this principle may be found in Labor Code section 3208.3, subdivision (b), which has now introduced a specific causation requirement where a worker claims to have sustained an industrial psychiatric injury.

[5]Added by Statutes 1983, chapter 1160, section 1, page 4390.

it clear that its express intention was to "overrule" the *Jensen* decision (*Jensen* v. *Workers' Comp. Appeals Bd.* (1982) 136 Cal.App.3d 1042 [186 Cal.Rptr. 570]). In *Jensen*, the applicant, a mechanic, sustained an industrial back injury and subsequently reinjured his back at home. At issue was apportionment to the subsequent noncompensable injury. The WCJ ultimately apportioned equally between the two injury-producing incidents, upheld by the Board. The *Jensen* court refused to permit apportionment to the subsequent nonindustrial injury in the absence of express statutory authority. It concluded that "sections 4663 and 4750 do not authorize apportionment to a subsequent nonindustrial injury" (136 Cal.App.3d at p. 1047) and annulled the Board order to the extent it allowed apportionment of Jensen's disability.

It is clear that the Legislature intended apportionment in appropriate cases, but we must determine what is meant by "subsequent noncompensable injury" in the statute. "Subsequent" clearly means later in time than the injury which is subject to rating. "Injury" is generally defined as "hurt," or "damage," or "harm." "Noncompensable injury" may be defined by reference to what is considered a "compensable injury" pursuant to the Labor Code. There is a comprehensive discussion of that term in *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, at pages 752-753 [7 Cal.Rptr.2d 808, 828 P.2d 1195]. "The touchstone of the workers' compensation system is industrial injury which results in *occupational disability* or death. [Citations.] Labor Code section 3208 defines 'injury' as '*any* injury or disease arising out of the employment . . . .' (Italics added.) Labor Code section 3208.1 describes 'specific' injuries 'occurring as the result of one incident or exposure *which causes disability or need for medical treatment*' and 'cumulative' injury as 'occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which *causes any disability or need for medical treatment*.' (Italics added). Thus, as the court in *Coca Cola Bottling Co.* v. *Superior Court* (1991) 233 Cal.App.3d 1273 [285 Cal.Rptr. 183], observed, 'a compensable injury is one which causes disability or need for medical treatments.' (*Id.* at p. 1284.) [¶] Moreover, the workers' compensation system is designed to compensate *only* for such disability or need for treatment as is occupationally related." (Italics in original.)

We conclude that the key distinction the Legislature intended to make in Labor Code section 4750.5 was between compensable and noncompensable injuries, rather than expanding the ordinary meaning of "injury" to include a vast array of conditions and circumstances not usually relevant in apportionment. (If the Legislature had intended to include "condition," it would have

said so.) We are persuaded that the Legislature merely intended that apportionment would apply only to noncompensable injuries, that is, those clearly not occupationally related. This careful distinction reflected legislative awareness of case law which does provide for compensability for subsequent injuries where the first injury is a substantial factor in causing the second nonindustrial injury. (See, e.g., *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 16-17 [1 Cal.Rptr. 73].) Beyond this, it did not go.

In the case before us, it should be noted that applicant's periods of "unemployment" occurred between the first and second injury, and between the second and third injury. Her pregnancies occurred contemporaneously with the first injury and after the third injury, respectively. Dr. Greer appeared to be referring to the second pregnancy rather than the first, which did occur "subsequent" to the third injury. In his report of October 11, 1989, Dr. Greer opined that the second pregnancy had contributed to applicant's carpal tunnel syndrome, an opinion shared by Dr. McDavid. Neither physician, however, explained in what manner applicant's pregnancy constituted an "injury" or caused any permanent, rateable disability or necessarily required medical treatment, justifying apportionment. Certainly "unemployment" can not be regarded as an "injury."

The uncertainty and difficulty arising from attempts to apportion to such conditions as applicant's unemployment or pregnancy demonstrates the unlikelihood that the Legislature ever intended that this be done. We reject the application of this statute by the WCJ and the Board to permit apportionment here.

Since the apportionment was based on an erroneous interpretation of what constitutes "noncompensable injury," and the apportionment permitted by Labor Code section 4750.5, we annul the Board's decision upholding the apportionment, and remand with directions to award applicant compensation based on the unapportioned rating of 57 percent.

## II. *Rate of Payment of Compensation*

The WCJ, in his report to the Board, noted retention of jurisdiction and indicated the possibility of merit in applicant's argument that the rate of payment of compensation was neither reasonable or fair. The applicant should be permitted to proceed to hearing on that issue upon remand.

## DISPOSITION

We annul the Board's order of August 10, 1994 (as amended for clerical error on October 14, 1994), to the extent it affirmed the WCJ's apportionment of permanent disability. We remand to the Board to issue a new order awarding applicant permanent disability of 57 percent without apportionment, and to hold such further proceedings on the rate of payment of compensation as are appropriate.

Gilbert, J., and Yegan, J., concurred.