[No. C051885. Third Dist. Sept. 11, 2006.]

ED KOPPING, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA
HIGHWAY PATROL et al., Respondents.

1100

## COUNSEL

Law Offices of Dudley R. Phenix and Dudley R. Phenix for Petitioner.

Frailing, Rockwell & Kelly and John B. Frailing for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Robert W. Daneri, Suzanne Ah-Tye and Don E. Clark for Respondents California Highway Patrol and State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

Raymond G. Fortner, Jr., County Counsel, Patrick A. Wu, Assistant County Counsel, Leah D. Davis and Vincent A. Lim, Deputy County Counsel, as Amicus Curiae on behalf of Respondents.

Opinion

**ROBIE, Acting P. J.**—The question here is whether the presumption established by subdivision (b) of Labor Code[1] section 4664 (section 4664(b)) is conclusive or rebuttable. That statute, which is one of the workers' compensation statutes enacted in 2004 to govern apportionment of permanent disability (Stats. 2004, ch. 34, § 35),[2] provides that "[i]f the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof."

Petitioner Ed Kopping contends this statute is internally inconsistent, because the second sentence means the section 4664(b) presumption is actually rebuttable, not conclusive as the first sentence says it is. Kopping contends the statute must be construed liberally in his favor and thus interpreted to create a rebuttable presumption of the continued existence of a prior permanent disability that can be rebutted by proof of medical rehabilitation prior to the subsequent industrial injury.

For reasons we will explain, we conclude the Legislature intended the section 4664(b) presumption to be conclusive, not rebuttable, notwithstanding the second sentence of the statute. That means the Workers' Compensation Appeals Board (Board) correctly determined that Kopping is not entitled to prove he was medically rehabilitated from his prior permanent disability when he sustained a subsequent industrial injury. However, the Board incorrectly determined that Kopping has the burden of disproving overlap between his current permanent disability and his previous disability in order to establish his claim to permanent disability benefits. Instead, we conclude State Compensation Insurance Fund (State Fund), the adjusting agency for Kopping's employer, has the burden of proving overlap between the current disability and the previous disability in order to establish its right to apportionment of Kopping's permanent disability. Accordingly, we will annul the Board's decision and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Kopping injured his spine while working as a traffic officer for the California Highway Patrol (CHP). The parties stipulated that the injury

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] "Apportionment is the process employed . . . to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility." (*Ashley v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 320, 326 [43 Cal.Rptr.2d 589].)

caused permanent disability of 29 percent, and Kopping was awarded $20,357.50 in permanent disability benefits. At the time, the agreed medical examiner described Kopping's factors of disability as restrictions in spinal motion and subjective complaints of intermittent-to-frequent slight-to-moderate pain.

In December 2002, Kopping sustained another back injury while working for the CHP. The parties stipulated that Kopping's level of permanent disability is now 27 percent, based on factors of disability described by another agreed medical examiner (Dr. Barber) as "approximating halfway between a disability precluding repetitive motions of the back and a disability precluding heavy lifting." In his report, Dr. Barber concluded there should be no apportionment of Kopping's permanent disability to the 1996 injury "based on Mr. Kopping's remarks that he completely recovered from this prior low back industrial injury with no ongoing physical limitations."

State Fund, the adjusting agency for the CHP, argued that notwithstanding Kopping's claim of rehabilitation from the prior injury, the permanent disability resulting from that injury had to be treated as still existing because of the conclusive presumption of section 4664(b). The workers' compensation administrative law judge (WCJ) agreed and concluded that Kopping was not entitled to any permanent disability benefits for his 2002 injury because the level of disability (29 percent) resulting from the 1996 injury exceeded the level of disability (27 percent) resulting from the 2002 injury.[3]

Kopping filed a petition for reconsideration with the Board challenging the WCJ's construction of section 4664(b). Kopping also argued that even if the presumption of section 4664(b) is conclusive, the WCJ still erred in deducting the prior percentage of permanent disability from the current percentage of disability to the extent the factors of disability did not overlap.

The Board granted reconsideration. In its decision after reconsideration, the Board rescinded the WCJ's decision and returned the matter to the trial level to allow the parties to further develop the record, if necessary, and for the WCJ to reconsider the matter in light of two recent en banc decisions by the Board on the issue of apportionment: *Sanchez v. County of Los Angeles* (2005) 70 Cal.Comp.Cases 1440 (*Sanchez*) and *Strong v. City & County of San Francisco* (2005) 70 Cal.Comp.Cases 1460 (*Strong*).

In *Sanchez* and *Strong*, the Board held that "[w]hen the [employer[4]] has established the existence of any prior permanent disability award(s) . . . , the

---

[3] The WCJ did award further medical treatment to cure or relieve the effects of the injury.

[4] The Board uses the term "defendant," rather than "employer"—presumably to encompass the workers' compensation insurers that are often the named party on the other side in a

permanent disability underlying any such award(s) is conclusively presumed to still exist, i.e., the applicant is not permitted to show medical rehabilitation from the disabling effects of the earlier industrial injury or injuries." (*Sanchez, supra,* 70 Cal.Comp.Cases at p. 1442; see *Strong, supra,* 70 Cal.Comp.Cases at p. 1462.) The Board further held that in such cases, "the percentage of permanent disability from the prior award(s) will be subtracted from the current overall percentage of permanent disability, unless the applicant *disproves* overlap, i.e., the applicant demonstrates that the prior permanent disability and the current permanent disability affect different abilities to compete and earn, either in whole or in part."[5] (*Sanchez, supra,* 70 Cal.Comp.Cases at p. 1442.) Thus, the Board returned this case to the WCJ to determine whether Kopping had disproved (or *could* disprove) overlap, *not* to allow Kopping to prove medical rehabilitation from the disabling effects of his earlier injury.

Kopping petitioned this court for a writ of review of the Board's decision after reconsideration, which we granted to consider the intended meaning of section 4664(b).[6]

---

workers' compensation case. We use the term "employer" to avoid confusion, but obviously intend that term to include an insurer that stands in the employer's shoes.

[5] This exact sentence appears only in *Sanchez* because, for a reason we cannot discern, the Board used slightly different wording in *Strong.* The difference is not significant. (Compare *Sanchez, supra,* 70 Cal.Comp.Cases at p. 1442 and *Strong, supra,* 70 Cal.Comp.Cases at p. 1462.) Nevertheless, we quote from *Sanchez* in preference to *Strong* because *Sanchez,* like this case, involved successive injuries to the same region of the body, while *Strong* involved successive injuries to different regions of the body.

[6] State Fund contends Kopping's petition for a writ of review was premature because: (1) "there is no longer any decision or award to challenge because the WCAB *rescinded* it"; and (2) "the WCAB's decision did not . . . determine any substantial right or liability of those involved in the case" or "conclusively determine a substantial issue basic to Kopping's entitlement to benefits." We disagree.

In relevant part, section 5950 provides that "[a]ny person affected by [a] decision . . . of the appeals board may . . . apply . . . for a writ of review, for the purpose of inquiring into and determining the lawfulness of the . . . decision . . . following reconsideration." Here, Kopping has asked us to review the Board's decision after reconsideration, which adversely affects him by precluding him from arguing on remand that he was medically rehabilitated from his prior disability when he was injured in 2002.

"[A] petition for review of an order by the WCAB lies when the order conclusively determines, for purposes of the compensation proceeding, a substantial issue basic to the employee's entitlement to benefits." (*Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1078 [97 Cal.Rptr.2d 418].) Here, in remanding the case to the WCJ for reconsideration in light of *Sanchez* and *Strong,* the Board conclusively determined that Kopping was *not* entitled to prove medical rehabilitation from his prior injury. We deem this a substantial issue basic to Kopping's entitlement to benefits and therefore deem the Board's decision after reconsideration reviewable under *Maranian.*

## DISCUSSION

■ "The fundamental rule of statutory construction is to ascertain and effectuate the intent of the Legislature in enacting the statute. [Citation.] We construe the workers' compensation scheme as a whole and consider the words used in their usual, commonsense meaning. [Citation.] ■ We liberally construe all aspects of workers' compensation law in favor of the injured worker." (*Henry v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 981, 984 [80 Cal.Rptr.2d 631].) "[T]he so-called 'liberality rule,' " however, (which is found in section 3202) "cannot supplant the intent of the Legislature as expressed in a particular statute." (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449].) If the Legislature's intent appears from the language and context of the relevant statutory provisions, then we must effectuate that intent, "even though the particular statutory language 'is contrary to the basic policy of the [workers' compensation law].' " (*Ibid.*, quoting *Earl Ranch, Ltd. v. Industrial Acc. Com.* (1935) 4 Cal.2d 767, 769 [53 P.2d 154].)

■ Read in isolation, the first sentence of section 4664(b) is clear: "If the applicant has received a prior award of permanent disability, it shall be *conclusively* presumed that the prior permanent disability exists at the time of any subsequent industrial injury." (Italics added.) "Where the law makes a certain fact a 'conclusive presumption' evidence cannot be received to the contrary." (*Estate of Mills* (1902) 137 Cal. 298, 303 [70 P. 91].) Thus, if section 4664(b) creates a conclusive presumption of the continued existence of a prior permanent disability, then upon proof that the applicant received a prior award of permanent disability, evidence cannot be received that the prior permanent disability associated with that award did *not* exist at the time of any subsequent industrial injury. Here, that would mean Kopping would be forbidden from proving he was medically rehabilitated from the permanently disabling effects of his 1996 back injury when he injured his back again in 2002.[7]

Had the Legislature stopped with the first sentence of section 4664(b), this case would not be here. The Legislature, however, did not stop there; instead, it saw fit to add a second sentence to the statute, explaining that "[t]his presumption is a presumption affecting the burden of proof." (§ 4664(b).)

■ Without reference to the Evidence Code, this provision can be readily explained. Under workers' compensation law before the enactment of section

---

[7] Under the law prior to the enactment of section 4664(b), apportionment to a prior injury was not proper if the applicant was rehabilitated from the disabling effects of that injury at the time of the subsequent injury. (See, e.g., *County of Los Angeles v. Workers' Compensation Appeals Board* (1997) 62 Cal.Comp.Cases 504; *State Compensation Ins. Fund v. Industrial Acc. Com.* (1963) 59 Cal.2d 45, 56 [27 Cal.Rptr. 702, 377 P.2d 902].)

4664(b), the burden of proving apportionment fell on the employer, because "[i]t is the employer who benefits from a finding of apportionment." (*Pullman Kellogg v. Workers' Comp. Appeals Bd.* (1980) 26 Cal.3d 450, 456 [161 Cal.Rptr. 783, 605 P.2d 422].) Thus, the employer had the burden of proving the applicant had a prior industrial injury and that the present level of permanent disability was apportionable, in whole or in part, to that injury, for which the employer was not responsible. This would have included proving an overlap between the prior disability and the current disability, since overlap is part of apportionment. (See *Mercier v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711, 715–716 [129 Cal.Rptr. 161, 548 P.2d 361].) Accordingly, without reference to the Evidence Code, the two sentences of section 4664(b) can be reconciled as follows: The conclusive presumption of section 4664(b) is a presumption affecting the burden of proof because it affects the employer's burden of proving apportionment by conclusively establishing that the permanent disability resulting from a previous industrial injury still existed at the time of the subsequent injury. Of course, under this reading of the statute, the employer would still have to prove that the previous disability, which was conclusively presumed to still exist, overlapped with the current disability.

If we turn to the Evidence Code, however, we can see a potential conflict in the two sentences of section 4664(b). This is so because Evidence Code section 601 provides that "[a] presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." Further, Evidence Code section 606 provides that "[t]he effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact."

Thus, the Evidence Code gives the phrase "presumption affecting the burden of proof" a technical meaning, using it to describe a type of rebuttable presumption that imposes on the party against whom it operates the burden of proving the nonexistence of the presumed fact. Read in light of these provisions, the second sentence of section 4664(b) can be understood to say that the presumption of that statute is rebuttable. Under this reading of the statute, upon proof of a prior permanent disability award it would be presumed that the permanent disability on which that award was based still existed at the time of the subsequent injury, unless and until the applicant carried his or her burden of proving that it did not, e.g., by proving medical rehabilitation from the earlier injury.

The problem with reading the second sentence of section 4664(b) in light of Evidence Code sections 601 and 606 is that this reading of the statute appears to utterly negate that aspect of the first sentence which plainly identifies the presumption as "conclusive" in nature. As Evidence Code 601 explains, "[a] presumption is *either* conclusive *or* rebuttable" (italics added)—it cannot be both. Under this reading of the statute, either the first sentence is what the Legislature intended (the presumption is conclusive), and the second sentence is meaningless, or the second sentence (read in light of the Evidence Code) is what the Legislature intended (the presumption is rebuttable), and the word "conclusively" in the first sentence is meaningless.

In *Sanchez, supra,* 70 Cal.Comp.Cases at pages 1453 to 1455, the Board purported to harmonize the two sentences to avoid this dilemma. The Board's analysis on this point, which we set out at length, is as follows:

"[W]e conclude that, once [an employer] has established the existence of a prior award of permanent disability relating to the same region of the body, then the percentage of permanent disability found under the prior award will be subtracted from the current overall percentage of disability, *unless* the applicant *disproves* overlap by establishing that the prior permanent disability does not overlap the current permanent disability, either in whole or in part.

"This interpretation of section 4664(b) harmonizes its first sentence . . . with its second sentence . . . . That is, consistent with the first sentence, the prior permanent disability still will be conclusively presumed to 'exist,' and the applicant cannot show that he or she has medically rehabilitated from it. Nevertheless, consistent with the second sentence, the applicant will have the opportunity to disprove or negate apportionment, in whole or in part, by showing that his or her most recent injury caused some *new* permanent disability that did *not* previously 'exist,' i.e., that the new injury has produced separate and independent permanent disability that does not overlap the pre-existing permanent disability because the new disability affects *different* abilities to compete and earn. If, however, the applicant fails to disprove overlap, then the applicant cannot avoid the application of the conclusive presumption that the prior permanent disability still 'exists' and, therefore, the prior percentage permanent disability rating will be deducted from the current overall percentage permanent disability rating where the disabilities are in the same region as described in section 4664(c).

"Further, the phrase 'prior permanent disability' in section 4664(b) does *not* mean the *factors of disability* upon which the prior permanent disability award was based. To so interpret section 4664(b) would mean that, before the conclusive presumption could attach, the [employer] would have both the burden of proving the existence of a prior permanent disability award *and* the burden of proving the nature of the permanent disability upon which that

award was based. As noted earlier, the trigger for the conclusive presumption is the existence of a prior award of permanent disability, not the factors of permanent disability underline [*sic*] such an award.

"Additionally, if [an employer] were required to establish the prior factors of permanent disability as well as the existence of the prior permanent disability award, this effectively would cause the *second* sentence of section 4664(b) to be read out of the statute . . . . Once more, the second sentence of section 4664(b) provides, in essence, that the conclusive presumption that the prior permanent disability exists 'is a presumption affecting the burden of proof.' [A] 'presumption affecting the burden of proof' requires the party *against* whom the presumption operates to establish the *nonexistence* of the presumed fact. [Citation.] Reading the first and second sentences of section 4664(b) together, as we must, the conclusive presumption of the existence of prior permanent disability in the first sentence of section 4664(b) operates *in favor* of [the employer]. Therefore, any interpretation of the second sentence must require applicant to *disprove* something, while at the same time not nullifying whatever has been conclusively established.

"Both of these aspects of section 4664(b) are fulfilled by requiring the applicant to *disprove* the existence of overlap by establishing the nature of the permanent disability upon which the prior permanent disability award was based, rather than by requiring [the employer] to *prove* the existence of overlap by establishing the nature of that permanent disability. This is because, once the character of the permanent disability underlying the prior permanent disability award is established, the determination of apportionment is essentially a mechanical process—not a burden of proof issue—i.e., . . . it is determined using substantially the same overlap principles that have been historically applied . . . . Thus, if [an employer] had to prove not only the existence of a prior permanent disability award, but also the character of the permanent disability upon which the prior award was predicated, there would be nothing left for the applicant to *disprove*, in contravention to the second sentence of section 4664(b).

"Moreover, . . . a conclusive presumption is a substantive rule of law adopted to further some particular public policy or purpose. [Citations.] Similarly, a presumption affecting the burden of proof is intended to 'implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied.' [Citation.] It appears that the public policies behind the twofold conclusive and rebuttable presumptions of section 4664(b) are that apportionment of pre-existing disability will occur (i.e., the pre-existing disability will be deducted), unless some showing is made (other than medical rehabilitation) why apportionment should not occur. To interpret section 4664(b) to mean that, once a prior

permanent disability award has been established, the prior permanent disability percentage will be deducted *unless* applicant shows that the present and pre-existing disabilities do *not* overlap, in whole or in part, is consistent with these policies." (*Sanchez, supra,* 70 Cal.Comp.Cases at pp. 1454–1456, fn. omitted.)

Understandably, Kopping rejects the Board's interpretation of section 4664(b) because it precludes him from rebutting the continued existence of the prior disability through evidence of medical rehabilitation. In contrast to the Board, Kopping contends that "the only reasonable interpretation of the meaning of this statute, applying established rules of statutory construction, is that where the [employer] proves the existence of a prior permanent disability award, [section] 4664(b) operates to shift the burden of proof to the injured worker to demonstrate that the prior disability no longer exists or has diminished. To interpret this statute any other way would render useless the second sentence of [the statute]."

■ The primary flaw in this argument is that Kopping's interpretation of section 4664(b) contravenes the very principle he urges us to follow—that "[i]nterpretive constructions which render some words surplusage . . . are to be avoided." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) If Kopping is correct, and section 4664(b) simply operates to shift the burden of proof to the claimant to prove the prior disability no longer exists or has diminished, then there is nothing at all "conclusive" about the presumption that the prior disability continues to exist, and that word in the first sentence of the statute is rendered meaningless.

■ In any event, the rule that Kopping urges us to follow—and which the Board attempted to follow in *Sanchez*—has been described elsewhere as the "cardinal rule of statutory construction that in attempting to ascertain the legislative intention effect should be given, *whenever possible,* to the statute as a whole and to every word and clause thereof, leaving no part or provision useless or deprived of meaning." (*Weber v. County of Santa Barbara* (1940) 15 Cal.2d 82, 86 [98 P.2d 492], italics added.) Thus, while every reasonable attempt should be made to give meaning to every part of a statute, this rule recognizes that sometimes it is impossible to achieve this goal. The question for us is whether this is one of those times.

■ Turning back to the Board's interpretation of the statute, Kopping complains that the Board's interpretation—which he characterizes as creating a single, " 'quasi-rebuttable presumption' "—"find[s] no support in any of the actual statutory language." We tend to agree. As we have noted, a presumption is either conclusive or rebuttable; it cannot be both. Moreover, to the extent *Sanchez* can be read as finding *two* presumptions in section 4664(b)—

one conclusive (regarding the continued existence of the prior disability) and one rebuttable (regarding whether the prior disability and the new disability overlap)—that approach is not supported by the language of the statute. The reference in the second sentence of the statute to "[t]his presumption" is clearly a reference to the conclusive presumption set out in the first sentence of the statute. While we laud the Board's attempt to give meaning to both sentences in the statute, we do not believe the statute can be *reasonably* interpreted as creating two different, but related, presumptions that apply in apportionment cases. Section 4664(b) creates only a single presumption, which is either conclusive or rebuttable. The question is, which is it?

Kopping contends that construing section 4664(b) as creating a rebuttable presumption would "harmonize [the statute] with the remainder of the apportionment statutes created by [Senate Bill No.] 899"—the bill that modified the workers' compensation law in 2004.[8] He first points to subdivision (a) of section 4664 (section 4664(a)), which provides that "[t]he employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." According to Kopping, "[t]o interpret [section 4664(b)] as a conclusive presumption resulting in deduction of prior disability awards by operation of law is inconsistent with the mandate of [section] 4664(a) that the employer <u>shall be</u> liable for the percentage of disability caused by the injury."

■ We disagree. If *permanent* disability is understood as "the *irreversible* residual of an injury" (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2005) § 5.1, p. 276, italics added) (as contrasted with *temporary* disability), then it is anomalous that an injured worker who was determined to have a *permanent* disability could prove, at a later date, that he actually recovered from that disability. If section 4664(b) is understood as representing the Legislature's commonsense recognition that there *can be* no recovery from a *permanent* disability, then there is no inconsistency between that statute and section 4664(a). This is so because a new industrial injury cannot be the cause (direct or otherwise) of a preexisting permanent disability. Thus, the presumption that a permanent disability continues to exist throughout the claimant's lifetime is perfectly consistent with the provision in section 4664(a) that limits an employer's liability to the percentage of permanent disability

---

[8] "On April 19, 2004, Governor Schwarzenegger signed into law Senate Bill No. 899 (2003–2004 Reg. Sess.), a package of reforms to the workers' compensation laws. (Stats. 2004, ch. 34.) (Bill No. 899.) The legislation took effect immediately as urgency legislation. [Citation.] Bill No. 899 changed, among other things, the law with regard to apportionment of permanent disability. (Stats. 2004, ch. 34, §§ 33 [repealed Lab. Code, § 4663 (former § 4663)], 34 [added new Lab. Code, § 4663 (§ 4663)], 35 [added Lab. Code, § 4664 (§ 4664)], 37 [repealed Lab. Code, § 4750 (former § 4750)], 38 [repealed Lab. Code, § 4750.5 (former § 4750.5)].)" (*Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 521 [31 Cal.Rptr.3d 789], fn. omitted.)

directly caused by the new injury. The employer should not be liable for a preexisting disability because the injury for which the employer is liable cannot be the cause of that disability.

Kopping next points to subdivision (c) of section 4663 (section 4663(c)), which provides as follows: "In order for a physician's report to be considered complete on the issue of permanent disability, it must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries. If the physician is unable to include an apportionment determination in his or her report, the physician shall state the specific reasons why the physician could not make a determination of the effect of that prior condition on the permanent disability arising from the injury. The physician shall then consult with other physicians or refer the employee to another physician from whom the employee is authorized to seek treatment or evaluation in accordance with this division in order to make the final determination."

Kopping asks, "[i]f the Legislature intended [section 4664(b)] to create a conclusive presumption requiring deduction of prior awards by operation of law, what would be the purpose of requiring physicians to calculate the percentage of current permanent disability caused by prior industrial injuries?" One answer to that question is that section 4664(b) creates a presumption arising from "a prior award of permanent disability," not from a prior industrial injury. It is possible that an applicant may have had a prior industrial injury, but never applied for or received an award of permanent disability resulting from that injury. In such a case, in the event of a subsequent industrial injury, the presumption of section 4664(b) would have no effect, but a physician could still determine, as a matter of fact, that the applicant's present level of permanent disability was partially caused by the previous industrial injury.

Kopping next contends that his interpretation of section 4664(b) benefits employers, compared to the prior law, because under his interpretation of the statute the claimant bears the burden of proving medical rehabilitation from the prior disability. Kopping cites no authority for the proposition he implies—that under prior law it was the employer's burden to *disprove* rehabilitation. In any event, even if we assume that deeming the presumption in section 4664(b) to be rebuttable would have *some* benefit for employers, that does not compel us to read the word "conclusively" out of the statute, as Kopping would have us do. We can do that only if we are left with no other reasonable choice, which, as we will explain, we are not.

This brings us to Kopping's reliance on the rule of liberality. In essence, he suggests that because section 4664(b) must be "liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment" (§ 3202), we should interpret section 4664(b) as creating a rebuttable presumption, rather than a conclusive one, because the rebuttable presumption is more favorable to claimants. If the apparent conflict in the statute could not be resolved any other way, Kopping's argument might carry the day. But that is not the case. Here, we need not read the word "conclusive" out of the statute under the guise of liberally construing it in favor of claimants because we conclude the apparent conflict in the statute can be resolved another way.

It is important to keep in mind that while section 4664(b) expressly uses the word "conclusive" to describe the presumption it creates, the statute does *not* use the word "rebuttable." The only reason the inconsistent concept of a rebuttable presumption arises is because the phrase "presumption affecting the burden of proof," which appears in the second sentence of section 4664(b), is used in the Evidence Code to identify a type of rebuttable presumption. But if the Legislature did not mean to use that phrase in section 4664(b) in the technical sense in which that phrase is used in the Evidence Code, then the problem vanishes.

We are given no particular reason to believe the Legislature intended the phrase "presumption affecting the burden of proof" in section 4664(b) to have the same meaning it has under the Evidence Code, other than it must be so. Having examined the legislative history of the statute, we have found nothing there to support that assumption. The first sentence of section 4664(b) can be traced to a bill introduced in the Assembly in February 2003, which addressed the apportionment of permanent disability. (Assem. Bill No. 1481 (2003-2004 Reg. Sess.) as introduced Feb. 21, 2003.) Section 2 of Assembly Bill No. 1481 proposed to add a statute to the workers' compensation law confirming that the burden of proving apportionment rests on the employer and setting out, in identical language, the conclusive presumption that now appears in the first sentence of section 4664(b). That language stood by itself, with nothing like the second sentence in section 4664(b) attached to it.

Although Assembly Bill No. 1481 (2003–2004 Reg. Sess.) went nowhere, its provisions—including the conclusive presumption that now appears in section 4664(b)—reappeared in July 2003 in a Senate amendment to a different Assembly bill on workers' compensation. (Assem. Bill No. 1579 (2003–2004 Reg. Sess.) § 38, as amended July 2, 2003.) Assembly Bill No. 1579 was one of 20 workers' compensation bills that were submitted to conference committee in July 2003 "for the purpose of ensuring a cohesive

and carefully crafted package of workers' compensation reform measures." (Sen. Com. on Labor & Industrial Relations, Analysis of Assem. Bill 1579 (2003–2004 Reg. Sess.) July 8, 2003, p. 7.)

The result of the conference committee's work was Senate Bill No. 899. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 899 (2003–2004 Reg. Sess.) Apr. 15, 2004, p. 1.) The apportionment provisions of Assembly Bill No. 1579 formed part of the basis for Senate Bill No. 899, and the conclusive presumption language that now appears in the first sentence of section 4664(b) transitioned between the two bills unscathed. (See Sen. Bill No. 899 (2003–2004 Reg. Sess.) § 35, as proposed Apr. 15, 2004.) By the time Senate Bill No. 899 emerged from the conference committee, however, the second sentence of what is now section 4664(b) had been added. (See Sen. Bill No. 899 (2003–2004 Reg. Sess.) § 35, as proposed Apr. 15, 2004.) Unfortunately, however, there is no explanation in the legislative history of the purpose of this provision. More importantly, there is nothing in the legislative history to indicate the Legislature intended the phrase "presumption affecting the burden of proof" in this provision to have the same meaning as the Evidence Code assigns to that phrase.

While we have found no particular reason to believe the Legislature intended the phrase "presumption affecting the burden of proof" in section 4664(b) to have the same meaning it has under the Evidence Code, we have one very good reason for believing otherwise—doing so avoids the internal inconsistency that otherwise arises between a conclusive presumption on one hand and a rebuttable presumption on the other. As we explained earlier, if section 4664(b) is read without reference to the Evidence Code, then the two sentences of the statute can be reconciled by understanding that the conclusive presumption of section 4664(b) *is* a presumption affecting the burden of proof because it affects the employer's burden of proving apportionment by conclusively establishing that the permanent disability resulting from a previous industrial injury still existed at the time of the subsequent injury. Although the conclusive presumption thus *affects* the employer's burden of proving apportionment by conclusively establishing the continued existence of a prior disability, it does not completely carry that burden, because the employer still has to prove the overlap, if any, between the previous disability and the current disability in order to establish that apportionment is appropriate.

This construction of section 4664(b) has the significant virtue of giving meaning to every word in the statute. It also avoids the Board's well-meaning but anomalous solution of reading the statute as creating either one quasi-rebuttable presumption or two different presumptions, one conclusive and one rebuttable.

 Because, under this construction of section 4664(b), the burden of proving overlap remains on the employer, it could be argued that there is, in effect, a rebuttable presumption in favor of the claimant that the two disabilities do *not* overlap, and that therefore this interpretation of the statute, like that of the Board, construes the statute as creating two different presumptions. That is not the case. True, the conclusive presumption that a prior permanent disability continues to exist at the time of a subsequent injury arises from section 4664(b). But the rebuttable presumption that the two disabilities do not overlap does *not* arise from the statute. Instead, that presumption arises from the long-standing principle—which remains valid—that the burden of proving apportionment falls on the employer because it is the employer that benefits from apportionment.

 Under our construction of the statute, what section 4664(b) does is simply prevent a claimant from defeating an employer's showing of apportionment by proving medical rehabilitation from a prior permanent disability for which he or she received permanent disability benefits. In such a case, the employer otherwise continues to bear the burden of proof on the issue of apportionment. First, the employer must prove the existence of the prior permanent disability award. Then, having established by this proof that the permanent disability on which that award was based still exists, the employer must prove the extent of the overlap, if any, between the prior disability and the current disability. Under these circumstances, the employer is entitled to avoid liability for the claimant's current permanent disability *only* to the extent the employer carries its burden of proving that some or all of that disability overlaps with the prior disability and is therefore attributable to the prior industrial injury, for which the employer is not liable.

 Thus, we conclude the Board did not err in determining that section 4664(b) creates a conclusive presumption of the continued existence of a prior permanent disability when the claimant received an award of permanent disability benefits based on that disability, thereby precluding the claimant from proving medical rehabilitation from the prior disability. The Board did err, however, in imposing on the claimant the burden of disproving overlap between the prior disability and the current disability. The burden of proving overlap is part of the employer's overall burden of proving apportionment, which was not altered by section 4664(b), except to create the conclusive presumption that flows from proving the existence of a prior permanent disability award. Accordingly, we will remand this matter to the Board, so that the Board can send the case back to the WCJ to apply the principles set forth in this opinion.

## DISPOSITION

The Board's decision after reconsideration is annulled. The matter is remanded for further proceedings consistent with the views expressed herein. The parties shall bear their own costs in the proceedings before this court. (Cal. Rules of Court, rule 56(l)(2).)

Butz, J., and Cantil-Sakauye, J., concurred.

Petitioner's petition for review by the Supreme Court was denied November 15, 2006, S146766.