[No. C053854. Third Dist. July 24, 2007.]

RACHEL CHANG, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and STATE
COMPENSATION INSURANCE FUND, Respondents.

**COUNSEL**

Frailing, Rockwell & Kelly and John B. Frailing for Petitioner.

Farrell, Fraulob & Brown, Melissa C. Brown; DuRard, McKenna & Borg and Susan R. Borg for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Robert W. Daneri, Suzanne Ah-Tye and David M. Goi for Respondent State Compensation Insurance Fund.

Law Offices of Saul Allweiss and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Respondent State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**RAYE, Acting P. J.**—The sole question of law presented by this petition for a writ of review is whether Labor Code section 4660, as amended in 2004, requires the use of a permanent disability rating schedule effective January 1, 2005, to apply to injuries sustained before the schedule was adopted when none of the three exceptions set forth in subdivision (d) of section 4660 apply.[1] In *Aldi v. Carr, McClellan, Ingersoll, Thompson & Horn* (2006) 71 Cal.Comp.Cases 783 (*Aldi*), the Workers' Compensation Appeals Board (Board) determined in an en banc decision that the Legislature intended section 4660 to apply to all pending matters regardless of the date of injury unless, for those claims arising before January 1, 2005, "there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker." (§ 4660, subd. (d); see *Aldi, supra,* 71 Cal.Comp.Cases at p. 785.) We believe the reasoning in *Aldi* is sound and affirm the decision of the Board.

### FACTS

■ The applicant, Rachel Chang, while employed as a typist by respondent State Compensation Insurance Fund, sustained an industrial cumulative trauma injury to her back and upper extremities during a period ending in July 2004. No one disputes that the injuries became permanent and stable in 2005. The workers' compensation judge (WCJ), applying the Board's en banc decision in *Aldi*, determined that none of the three exceptions to section 4660, subdivision (d) applied and therefore the permanent disability resulting from her injuries should be evaluated under the rating schedule that became effective January 1, 2005. The schedule is based on new legislation that

---

[1] All further statutory references are to the Labor Code.

requires the use of the American Medical Association Guides to the Evaluation of Permanent Impairment (5th ed.) for both the "descriptions and measurements" and the "percentages of impairments" as the basis for a disability award. (§ 4660, subd. (b)(1).)

The aggrieved applicant sought reconsideration. She argued that the Board's en banc decision in *Aldi* was wrongly decided. Bound to follow the Board's en banc decision (Cal. Code Regs., tit. 8, § 10341; *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1424, fn. 6 [118 Cal.Rptr.2d 105]), the WCJ recommended denial of her petition. The Board adopted the WCJ's report and denied the petition for reconsideration. Applicant seeks a writ of review.

## DISCUSSION

Section 4660 prescribes the method for determining the percentages of permanent disability for workers' compensation purposes. The statute was amended on April 19, 2004, as part of Senate Bill No. 899 (2003–2004 Reg. Sess.), a package of reforms to the workers' compensation laws (Stats. 2004, ch. 34).[2] The legislation took effect immediately as an urgency measure. (Stats. 2004, ch. 34, § 49; *McCarthy v. Workers' Comp. Appeals Bd.* (2006) 135 Cal.App.4th 1230, 1232 [37 Cal.Rptr.3d 909].) At issue is whether the Legislature intended a new permanent disability rating schedule to apply to injuries sustained before the schedule was adopted. We must construe the meaning of section 4660 de novo, but we will accord great weight to the Board's construction in *Aldi* unless it is clearly erroneous. (*McCarthy, supra,* 135 Cal.App.4th at p. 1234.)

Because legislative intent is best derived from the clear, unambiguous, and plain meaning of the statutory language, we turn first to the provisions before us. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) Section 4660, subdivision (d) provides as follows: "The schedule shall promote consistency, uniformity, and objectivity. The schedule and any amendment thereto or revision thereof shall apply prospectively and shall apply to and govern only those permanent disabilities that result from compensable injuries received or occurring on and after the effective date of the adoption of the schedule, amendment or revision, as the fact may be. For compensable claims arising before January 1, 2005, the schedule as revised pursuant to changes made in

[2] The request of respondent State Compensation Insurance Fund for judicial notice of the chaptered version of Senate Bill No. 899 (2003–2004 Reg. Sess.) is granted.

legislation enacted during the 2003–04 Regular and Extraordinary Sessions shall apply to the determination of permanent disabilities when there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by Section 4061 to the injured worker."

In *Aldi*, the Board recognized that the second sentence of section 4660, subdivision (d) stated the general rule that the new schedule would be applied prospectively. (*Aldi, supra,* 71 Cal.Comp.Cases at p. 790.) Prospective application of the revised schedule has been a part of section 4660 since 1951 and was consistent with the express language of former section 4660, subdivision (c). (Stats. 1951, ch. 1683, § 1, p. 3880; Stats. 1965, ch. 1513, § 91, p. 3579; Stats. 1993, ch. 121, § 53, p. 1301.)[3] The addition of the third sentence of section 4660, subdivision (d) in 2004 created the issue now before us.

The Board in *Aldi* explained that "the third sentence of section 4660(d) provides a clear and specific exception to the general rule of prospective application as stated in the second sentence, and mandates the application of the revised rating schedule to injuries occurring before January 1, 2005, in specified instances. That is, the third sentence unambiguously states 'for compensable claims *arising before January 1, 2005* the schedule as revised . . . *shall apply to the determination of permanent disabilities*' if none of the specified exceptions have been met." (*Aldi, supra,* 71 Cal.Comp.Cases at p. 791, italics added by *Aldi.*) The Board concluded: "Thus, for all pending cases involving injuries occurring prior to January 1, 2005, the revised schedule must be applied unless one of the listed exceptions has been established. Only in those cases where it can be established that at least one of the listed exceptions exists would the prior rating schedule still apply." (*Ibid.*)

---

[3] In the second of two briefs filed before oral argument, amicus curiae California Applicants' Attorneys Association (CAAA) urges us not to presume the Legislature intended to overthrow its longstanding principle regarding prospective application. CAAA contends that *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1332 [57 Cal.Rptr.3d 644, 156 P.3d 1100] (*Brodie*), which reviewed several consolidated cases, attests to the vibrancy of this rule of construction as applied to the 2004 workers' compensation reform package. We do not dispute the vitality of the rule, but we do not find it dispositive here, and nothing in *Brodie* suggests that it applies to resolving the ambiguity presented by the third sentence in section 4660, subdivision (d).

Applicant challenges the Board's interpretation of legislative intent, arguing that it fails to harmonize all the parts of the statute and to give meaning to every word or phrase so as not to render any portion of the statutory language mere surplusage. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 [3 Cal.Rptr.3d 623, 74 P.3d 726]; *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1194 [81 Cal.Rptr.2d 521, 969 P.2d 613].) Applicant urges us to consider section 4660, subdivision (e) as well as section 4660, subdivision (d). Subdivision (e) states: "On or before January 1, 2005, the administrative director shall adopt regulations to implement the changes made to this section by the act that added this subdivision." Thus, as applicant points out, the administrative director could have adopted regulations that became effective before January 1, 2005.

Considering section 4660, subdivision (e) in conjunction with the second and third sentences of section 4660, subdivision (d), applicant contends the Legislature intended the third sentence to apply only if the administrative director adopted regulations before January 1, 2005, in which case there would have been many injuries that occurred in 2004 and that would be subject to the revised rating schedule. In other words, if the administrative director had adopted a revised schedule after April 19, 2004, but before January 1, 2005, then the revised schedule would apply to injuries sustained during 2004. Since the new schedule did not become effective until January 1, 2005, however, the third sentence of subdivision (d) became moot. Applicant insists that this reading of the section harmonizes the second and third sentences without implying that the third sentence is an exception to the general rule provided in the second sentence.

The Board in *Aldi* rejected the identical argument. The Board explained: "We are not persuaded by the WCJ's conclusion that the Legislature intended that the revised rating schedule would not apply retroactively to injuries occurring prior to the effective date of the revised schedule. The WCJ's interpretation does not follow the requirement of statutory interpretation that meaning be given to every word or phrase and to not 'render any portion of the statutory language mere surplusage.' The conclusion that the Legislature intended the third sentence, and the exceptions to the retroactive application set forth therein, to be moot because the Administrative Director did not adopt a revised rating schedule before January 1, 2005, does not harmonize

the statutory language. Rather, it nullifies a central condition for the application of the revised rating schedule as mandated by the statute. In the absence of clear language to indicate the legislative intent to condition the applicability of the retroactive exceptions upon the adoption of a revised schedule prior to January 1, 2005, we cannot adopt such an interpretation.

"Contrary to the WCJ's interpretation, there is no inconsistency between the second and third sentence. The second sentence carries forward the prospective application language that has been present for many years. The third sentence delineates which injuries occurring before January 1, 2005 are subject to the revised rating schedule, and which are to be rated according to the prior rating schedule. These sentences may be harmonized whether the revised rating schedule became effective on January 1, 2005 or became effective at some earlier date in 2004." (*Aldi, supra,* 71 Cal.Comp.Cases at p. 792.)

■ According great weight to the Board's construction of the statute, we agree that the Legislature intended the third sentence to create a limited exception to the prospective application of the revised rating schedule. The Board's construction comports with the urgent nature of the reform package to avert a crisis in workers' compensation coverage. (*Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.* (2007) 151 Cal.App.4th 148, 155 [59 Cal.Rptr.3d 611].) It allows for limited retroactivity of the new schedule to injuries before January 1, 2005, where there has been either no comprehensive medical-legal report or no report by a treating physician indicating the existence of permanent disability, or when the employer is not required to provide the notice required by section 4061. Most importantly, the Board's construction is compatible with the plain meaning of the two sentences and gives meaning to the express language chosen by the Legislature.

As amicus curiae California Workers' Compensation Institute aptly points out, the exceptions to retroactivity set forth in the third sentence "are both logical and internally consistent as the cases would have started the medical-legal evaluation process under the old PDRS [permanent disability rating schedule]. The legislature obviously felt that the medical-legal evaluation process should not be stopped mid-stream, and benefits to the injured worker delayed, by requiring the parties to return to re-do all of their medical-legal evaluations to utilize an entirely different PDRS than what was in effect when

the identification of permanent disability first arose. Because neither of these statutory bases to apply the old PDRS exists in this case, as a matter of law the new PDRS must be applied."

Nothing CAAA argues dissuades us otherwise. With a passion unhinged from the narrow issue before us, it implores us to intervene immediately on behalf of injured workers because the savings to the state from the 2004 reforms have been enormous, insurance profits are skyrocketing, businesses are not fleeing the state as feared, and disputes over the legislation are increasing. It insists that there is no legislative history to support the assertion that every provision of Senate Bill No. 899 (2003–2004 Reg. Sess.) should be construed to reduce benefits to injured workers despite the fact that as far as we can tell no one is making such a radical assertion and we certainly do not endorse it here. It relies on a Rand Report's conclusion that the workers' compensation system was failing both employers and workers before the reform legislation was passed in 2004, mistaking us for a legislative committee and forgetting that our sole task is to interpret the language of the statute before us.[4] The fact that both employers and workers were to benefit from the new legislation does not assist us in construing the plain language of section 4660, subdivision (d).

█ Nor have we forgotten our obligation to liberally construe the workers' compensation law in favor of the injured worker. (*Kopping v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 1099, 1106 [48 Cal.Rptr.3d 618].) As we repeated in *Kopping*: " '[T]he so-called "liberality rule," ' however, (which is found in section 3202) 'cannot supplant the intent of the Legislature as expressed in a particular statute.' (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449].) If the Legislature's intent appears from the language and context of the relevant statutory provisions, then we must effectuate that intent, 'even though the particular statutory language "is contrary to the basic policy of the [workers' compensation law]." ' [Citation.]" (*Kopping, supra,* 142 Cal.App.4th at p. 1106.)

---

[4] CAAA relies on *E & J Gallo Winery v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1536 [37 Cal.Rptr.3d 208] to support its contention that the Legislature intended to enact comprehensive reform to address the crisis of high employer costs and low employee benefits. While this particular point does not assist us one way or the other, we point out that the Supreme Court disapproved *Dykes*'s essential holdings in *Brodie, supra,* 40 Cal.4th at page 1332.

## DISPOSITION

The decision of the Board is affirmed.

Hull, J., and Robie, J., concurred.